EL PUEBLO DE PUERTO RICO, demandante y apelado *v.* ELOY BOSCH, acusado y apelante.

No. 4579.—*Sometido:* Mayo 19, 1932. *Resuelto:* Julio 7, 1932.

*Pedro M. Porrata,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

El 4 de julio de 1930 el apelante era celador de la Central Matilde, situada en el Distrito Judicial de Ponce. Aparece que la finca de la central es muy extensa y que una carretera pública la atraviesa; en otras palabras, que la propiedad de la Central Matilde está a ambos lados de la vía púbica. El susodicho 4 de julio, alguien informó al apelante que dos hombres estaban cortando yerba en la finca de la central, sin permiso. Los dos hombres, aparentemente, le fueron señalados al apelante y estaban entonces en la carretera, donde él se unió a ellos. Hubo alguna prueba tendente a demostrar que el apelante sacó un revólver y que uno de los testigos denunciantes lo agredió con un "mocho." Nada más sucedió, aparentemente, excepto el arresto del apelante.

No hay duda de que el acusado en verdad estuvo en la carretera con un revólver sobre su persona. Aparece que él

había estado empleado como celador durante más de veinte años, y que su ocupación, a semejanza de los mayordomos, era voltear la finca. El estaba autorizado por sus patronos para portar un revólver.

El apelante fué convicto del delito de portar armas prohibidas bajo la Ley No. 14 de 25 de junio de 1924. Cuando esta ley empezó a regir su constitucionalidad fué atacada por varios motivos. Uno de esos fundamentos fué que la ley no especificaba arma alguna. Contestamos esto en el caso de *El Pueblo* v. *Cruz Rosado,* 34 D.P.R. 315, en el sentido de que las armas envueltas eran las mismas o similares a las enumeradas en la ley de 1905, Comp., sec. 5994. Este llegó a ser un caso principal (*leading*) y fué citado en *El Pueblo* v. *Alonso,* 35 D.P.R. 475, como decisivo de que podía acudirse a la ley anterior para determinar la naturaleza de las armas.

Igualmente, en los casos de *El Pueblo* v. *Acevedo,* 34 D. P.R. 460, y *El Pueblo* v. *Vadi,* íd. 462, sostuvimos la ley en una forma un poco distinta. La sección primera de la ley disponía que: "Toda persona que ilegalmente portare o condujere cualquier arma o instrumento con el cual pueda causarse daño corporal, incurrirá en pena de prisión de un mes a seis meses." Resolvimos que a esta sección la complementaba la 5 de la ley, que dice así:

"Las disposiciones de esta Ley no serán aplicables:

"1. A la portación de los útiles, herramientas e instrumentos de las artes, profesiones, oficios y ocupaciones o deportes cuando se portaren con motivo u ocasión de los mismos;

"2. A la portación de bastones de uso corriente, siempre que no contengan estoque u otra de las armas prohibidas por esta Ley;

"3. A la portación de cortaplumas o cuchillas plegadizas de bolsillo, cuyas hojas no excedan de tres pulgadas de largo;

"4. A la portación de armas de caza cuando se usaren para este fin, por personas con licencia para ello; *Disponiéndose,* que las licencias para cazar continuarán concediéndose de acuerdo con la ley especial en la materia;

"5. A la portación de armas dentro de la propia casa o finca;

"6. A la portación por inválidos o lisiados, de muletas, bastones u otros útiles semejantes exigidos por su estado corporal."

En otras palabras, decidimos que la definición de lo que era un arma prohibida se hallaba examinando las dos secciones conjuntamente.

■ Considerando nuevamente la ley, resolvemos que la palabra "ilegalmente" en la primera sección debe significar cualquier uso de un arma o instrumento que esté fuera de las excepciones contenidas en la sección 5, *supra*. Es, pues, evidente que una persona que caiga dentro de las excepciones especificadas en la ley, no ha cometido delito alguno al portar un revólver. También somos de opinión de que cuando la cuestión es dudosa, el peso recae sobre el gobierno para demostrar que la persona acusada de portar un arma pohibida cae fuera de las excepciones enumeradas o sea dentro de la definición de la ley, tal como la hemos interpretado.

La ley contra el uso de armas prohibidas es ordinariamente de la índole de justicia preventiva. Continuamente se efectúan arrestos por la portación de armas, cuando no ha surgido uso ilegal alguno, o, en la mayoría de los casos, ni siquiera se ha intentado. El que se lleve un arma para la propia protección no revela de por sí la intención de usarla con fines ilegales. De acuerdo con el artículo 117 del Código de Enjuiciamiento Criminal, una persona particular puede arrestar a otra por un delito público cometido o que se ha intentado cometer en su presencia. El apelante sostuvo que él tenía derecho a impedir que la gente tomara la propiedad de su patrono, y a ir a la carretera con ese fin en la forma en que lo hizo. Fué al sacar su revólver, aparentemente, que él recibió heridas de uno de los testigos denunciantes.

■ ■ Gran parte de la discusión de este caso giró sobre la cuestión de si un mayordomo o celador estaba en su propia finca mientras actuaba como tal mayordomo o celador. Creemos que lo estaba.

La jurisprudencia parece pronunciarse en el sentido de que un mero empleado no está dentro de su propia finca, pero

que un mayordomo o celador sí. En Carolina del Norte se resolvió en un caso, *State* v. *Terry,* 93 N. C. 585, 53 Am. Rep. 472, que los mayordomos, superintendentes y personas por el estilo eran los agentes del dueño y que podían considerarse como que estaban en su propia finca, aunque un empleado ordinario no. En el caso posterior de *State* v. *Anderson,* 39 S. E. 824, la corte resolvió que un celador era parecido a un mayordomo o superintendente y era el agente de su patrono. Un mayordomo o celador tiene necesariamente el uso y ocupación de la propiedad que recorre. No es necesario que él deba vivir en la misma o que, para justificar su derecho a usar un arma, el dueño de la propiedad le arriende parte del terreno o le dé algún derecho titular nominal a la propiedad. Dentro del espíritu de la ley él tiene tal derecho y no es necesario medio artificial alguno para darle título o propiedad.

El fiscal de esta corte dijo que no podía comprender cómo surgió la idea en Puerto Rico de que un mayordomo o celador podía considerarse como situado en su propia finca. El fiscal dice que ha buscado toda la jurisprudencia de este tribunal y nada ha hallado que justifique esa asunción. La asunción procede, no de las decisiones de esta corte, sino de las leyes anteriores. La sección 2 de la ley de marzo 12, 1908, por ejemplo, dispone como sigue:

"El artículo precedente no se aplicará a un individuo en servicio activo, como individuos del ejército, ni a un funcionario del orden público, que ejerza autoridad, como juez, fiscal, márshal, submárshal, alguacil de los tribunales insulares o federales, a las personas ocupadas en custodiar presos, mientras estuvieren así empleadas, ni a ningún policía ni a ningún agente de rentas internas, en el desempeño de sus deberes oficiales, ni prohibe tener o llevar armas a los propietarios, arrendatarios, administradores, mayordomos o celadores de una finca cuando estuviesen en ella o al ir y regresar de la misma, así como dentro de sus casas particulares o edificios que custodiasen o guardasen ni se aplicará a una persona adscrita al servicio militar o naval de los Estados Unidos; ni a personas conductoras de los correos de los Estados Unidos, ni a persona encargada de la custodia de propiedad o fondos insulares o municipales, como celadores o guardias que lleven una autorización por escrito del jefe superior

encargado de dicha propiedad o fondo; ni tampoco se aplicará al acto de llevar cortaplumas plegadizos de bolsillo corrientes, que tengan hojas de menos de tres pulgadas de longitud; ni tampoco se aplicará al instrumento denominado machete, cuando se usa o lleva de buena fe, por el dueño o poseedor del mismo, como requisito indispensable de labor. *Disponiéndose:* Que la autorización que por esta ley se concede a los propietarios, arrendatarios, administradores, mayordomos o celadores de fincas agrícolas, para ser efectiva fuera de las mismas, tendrá que ser confirmada a solicitud de los interesados, por el juez municipal respectivo.''

Es evidente que la legislatura consideró a los propietarios, arrendatarios, administradores, mayordomos o celadores de fincas agrícolas como si estuvieran más o menos en la misma categoría, una cuestión de *noscitur a sociis.* Es cierto que esa ley exigía que las personas en ella nombradas, incluso los dueños, obtuvieran permiso del juez municipal para poder usar una pistola fuera de la finca. Evidentemente la legislatura de 1924 no creyó necesario que las personas enumeradas tuvieran tal permiso, porque la ley de 1924 no contiene semejante requisito. A los propietarios anteriormente se les exigía obtener licencia, pero ahora no. Tampoco se les exige a las otras personas enumeradas en la ley de 1908. Esta ley no creó derechos en los agentes. Meramente reconoció la existencia de tales derechos. En otras palabras, lo que se reconoció fué que un celador, mientras se halla en el desempeño de su cargo, está en su propia finca.

¿Dejó el apelante de ser tal celador cuando a fin de reprender o reprimir a unas personas que se estaban llevando la yerba de la finca de su patrono, él fué a la carretera? Creemos que no. Penetrar en la vía pública bajo tales condiciones caía claramente dentro de sus deberes. Si tenemos razón en nuestra contención de que un celador tiene derecho a usar una pistola mientras desempeña sus deberes, se colige que el hecho de que el celador saliera a la vía pública fué un acto que caía enteramente dentro de la esfera de su empleo o de las atribuciones del mismo.

Aquí podemos agregar que a semejanza del caso de Cruz

Rosado, pueden consultarse leyes *in pari materia* para determinar cuál fué la intención de la legislatura. De suerte que a este respecto estamos bastante convencidos de que la sección 5 de la ley de 1924 tuvo la intención de acoger a los celadores en la misma forma que lo habían sido en 1908, pero sin la necesidad de obtener una licencia mientras estuvieran en el desempeño de sus deberes.

Aun hay otro aspecto en este caso, a saber, la cuestión de intención. Este tribunal la discutió en el caso de *El Pueblo* v. *Ortega,* 35 D.P.R. 784. Cuando un celador sale de su propiedad para impedir la comisión de delitos, no hay la posibilidad de atribuírsele la intención de violar la ley. Es cierto que el delito de portar armas prohibidas es *malum prohibitum* y no *malum in se,* pero debe haber la unión del acto y la intención. Esta intención no aparece cuando un hombre meramente de modo incidental penetra en la carretera sin intención de permanecer allí con su pistola. El no tiene un *animus manendi;* por el contrario, su *animus* es regresar a sus deberes o más bien continuar desempeñando sus deberes en la finca, tan pronto como sea posible.

No deseamos recalcar el punto, pero un celador puede considerarse como que está en su propia finca cuando penetra en una carretera que separa dos predios de terreno pertenecientes a su patrono.

*Se revoca la sentencia apelada y se absuelve al acusado.*

El Juez Asociado Señor Hutchison está conforme con el resultado.

Los Jueces, Presidente Señor del Toro y Asociado Señor Aldrey, disintieron.*

EN MOCION DE RECONSIDERACION

Julio 29, 1932.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Si bien puede que hayamos diferido un poco en nuestro razonamiento, los miembros de esta corte que constituían la

---

* Nota: Véase el prefacio.

mayoría no tenían dudas de que un celador empleado debidemente se halla en su propia finca cuando está en el cumplimiento de sus deberes como tal celador y que no comete delito alguno dentro del significado de la ley si en el desempeño de sus deberes penetra en la carretera. De igual modo la mayoría de esta corte sustentaba el criterio de que un celador que penetra en una carretera que se encuentra situada entre dos fincas pertenecientes al mismo dueño, aun se halla, ante los ojos de la ley, en su propia finca. También somos de opinión que un celador tiene derecho a portar una pistola mientras va y viene de su casa en el cumplimiento de sus deberes.

Respecto a la definición del delito, naturalmente no quisimos decir que El Pueblo tenía que alegar y probar que el acusado caía fuera de las excepciones enumeradas en el artículo 5 de la ley. Lo que tuvimos en mente fué decir que nos habíamos visto obligados, al definir la ley, a acudir a las excepciones así enumeradas.

Nuestra opinión anterior no se fundaba en los estatutos anteriores o en la autoridad por ellos concedida, sino que los citamos para demostrar más bien que la legislatura en aquel entonces tenía la idea de que mayordomos y celadores, al actuar como tales, se hallaban en sus propias fincas. Ninguna de las leyes dice que un celador se encuentra en su propia finca cuando desempeña sus deberes. Que lo está, es una consideración general sostenida por la ley de 1908.

Sin embargo, deseamos explicar una parte de nuestra opinión. En ella dijimos:

"La ley contra el uso de armas prohibidas es ordinariamente de la índole de justicia preventiva. Continuamente se efectúan arrestos por la portación de armas, cuando no ha surgido uso ilegal alguno, o, en la mayoría de los casos, ni siquiera se ha intentado. El que se lleve un arma para la propia protección no revela de por sí la intención de usarla con fines ilegales."

Tan sólo discutimos en términos generales que la intención de cometer cualquier otro delito no quedaba revelada por

el mero uso de un arma de fuego, mas no creemos haber dicho, y ciertamente no fué nuestra intención decir, que cualquiera podría eludir ser convicto de portar un revólver al decir o tratar de probar que no tenía intención de cometer delito alguno. Meramente tratábamos de dar énfasis al hecho de que el uso de un revólver no era *malum in se*. La intención queda revelada por la portación del arma, conforme hemos dicho en otros casos.

*Debe declararse sin lugar la moción de reconsideración.*

El Juez Asociado Señor Hutchison está conforme con el resultado.

Los Jueces, Presidente Señor del Toro y Asociado Señor Aldrey, disintieron.*