EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN GARCÍA (*a*) EL PERLA, acusado y apelante.

Núm. 6717.—*Sometido:* Noviembre 15, 1937. *Resuelto:* Noviembre 18, 1937.

*Angel M. Villamil,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El Fiscal del Distrito de San Juan formuló acusación contra Juan García (*a*) El Perla imputándole una infracción al artículo 1 de la Ley Prohibiendo Portar Armas de junio 25, 1924, como sigue: " . . . allá por el día 20 de enero, 1936 y en la municipalidad de San Juan, Puerto Rico, que forma parte del Distrito Judicial de San Juan, P. R., ilegal y voluntariamente portaba y conducía un revólver, siendo dicho revólver un arma con la cual puede causarse daño corporal."

Alegó su inocencia el acusado y celebrado el juicio fué condenado por la corte a sufrir treinta días de cárcel. Apeló y

el récord de su apelación quedó radicado en la secretaría de esta corte el 25 de junio último.

No presentó alegato el apelante dentro del término reglamentario y el 13 de octubre, 1937, el fiscal solicitó la desestimación del recurso por tal motivo y, además, porque del récord no se desprendía que se hubiera cometido error fundamental alguno tratándose por consiguiente de un recurso frívolo.

Señalada la vista de la moción para el 15 de noviembre en curso, el trece pidió el apelante que se admitiera un alegato que acompañó, insistiendo en su petición el día de la vista, mostrándose conforme en que el tribunal una vez que pesara las razones que aducía, resolviera definitivamente el caso. Tanto el apelante por su abogado como el fiscal informaron oralmente.

Como la moción del fiscal pidiendo la desestimación por frivolidad va también a los méritos del recurso y todo está ante nosotros, resolveremos el caso finalmente.

Conocemos la acusación. La prueba de cargo consistió en las declaraciones de dos testigos; la de descargo en las de tres con más la del propio acusado.

Dijo el primer testigo de cargo, Erasmo López, policía insular, que el 20 de enero de 1936, a las 11 a. m., en San Juan, ocupó un revólver al acusado en la Avenida Fernández Juncos, esquina General Hynes, al lado de la fábrica de licores de Dávila Hermanos; que el acusado "primeramente bajó de un automóvil y entró al edificio de la PRERA. Estaba el muchacho Ramón Crispín hablando conmigo y yo le dije: 'Bueno, ya se metió . . . a ver si lo guarda,' pero volvió y salió y al llegar a la esquina, que era casi a la hora del *rush* para salir los empleados de la PRERA, entonces él iba en cuerpo de camisa y yo le saqué el revólver. . ."

Contestando a la defensa manifestó que ocupó el revólver como a una distancia de unos sesenta metros del edificio de la PRERA y luego a nuevas preguntas del fiscal explicó que los sesenta metros eran a partir de la puerta de salida del

edificio y que la ocupación la hizo en la vía pública frente a Dávila Hermanos, encontrándose el otro edificio de la PRERA donde están las frutas, como a unas 250 ó 300 yardas.

La declaración del segundo testigo de cargo, Ramón Crispín, corrobora la del primero.

Comenzó la prueba de descargo con la declaración de Reinaldo Cestero, jefe de los almacenes de provisiones de la FERA. Dijo que para la fecha de la denuncia estaban recibiendo grandes cargamentos de provisiones y tenían tres almacenes, uno en la calle Isabel II, otro en Puerta de Tierra, parada 4, y otro en La Colectiva, y que con motivo de haber tirado unas bombas, algunos de los empleados adquirieron permiso de la corte para portar armas; que el acusado trabajaba como celador en el edificio de comunicaciones y servicios, teniendo que velar por las provisiones de todos los almacenes y con ese motivo lo autorizaron para portar armas dentro de los almacenes. Preguntado por el fiscal si había obtenido permiso de la corte para portar armas, intervino la defensa y dijo: "Nosotros no alegamos eso; la corte no le dió permiso."

Abraham Robles dijo que solicitó trabajo en la PRERA y mandaron al acusado a que lo llevara al almacén, "cuando salimos del edificio, que habíamos andado una distancia como de aquí a ahí, salió el guardia de detrás de un carro y le quitó el revólver a él."

Luis Peña Ramos manifestó que el acusado era un empleado a sus órdenes en la división de Comunicaciones y Servicios que a veces actuaba como celador, que "en aquellos momentos había un justificado estado de alarma promovido por disparos que se hacían contra la FERA", habiendo en un caso volado con dinamita la puerta del edificio que da a la estación del ferrocarril; que extendió permiso al acusado para que portara armas para usarlas como los demás empleados de la PRERA, que "las usan dentro y fuera del edificio, porque van de un edificio a otro, como pasaba en la FERA."

Declaró por último el acusado quien dijo que para la fecha de la denuncia estaba encargado de "no dejar parar automóviles frente a la PRERA y al mismo tiempo de *watchman;* velando al que salía con paquetes para registrarlo . . .cuando me pedían de un almacén entonces yo iba y veía, miraba . . . me fijaba en el movimiento al salir, que eran las horas que podía la gente cargar con las cosas . . . yo le fuí a pedir al señor Cestero que me colocara a Abraham Robles, a ese testigo que declaró aquí; yo estaba en el almacén y el señor ése fué a pedirme trabajo, pero como el señor que estaba en el almacén no podía darle trabajo, entonces yo vine donde el señor Cesteros y el señor Cesteros me ordenó que llevara a Robles a un almacén que queda cerca de la PRERA . . . . cuando estaba normal la cosa nosotros hacíamos guardia sin nada encima, pero llegó el momento de que pusieran unas dos o tres bombas y entonces nosotros teníamos que estar, como éramos empleados de allí, teníamos que estar velando y dando vueltas por todo aquello para que no se pegaran carros alrededor de los edificios y para que no se parara nadie por allí. También hubo robos y para evitar eso teníamos que estar pendientes de todo . . . entonces Mr. Bourne ordenó que nosotros podíamos portar armas mientras estuviéramos en el servicio dentro de los almacenes. . . En muchas ocasiones nosotros nos íbamos con el revólver; teníamos que llevárnoslo porque no se podía dejar. . . Muchas veces se dejaban; cuando se encontraba un sitio a propósito."

La ley es terminante. El acusado no era una de las personas autorizadas por la misma para la portación de armas —sección 6 de la Léy núm. 14 de 1924, Código Penal (ed. de 1937) pág. 407—, ni tenía permiso de la corte de distrito para ello.

Esto lo admite el propio apelante, pero sostiene que su caso está comprendido dentro de la excepción reconocida por la jurisprudencia sentada por esta Corte Suprema en el caso de *El Pueblo* v. *Bosch,* 43 D.P.R. 741, ya que él era un celador autorizado para portar armas dentro de los almacenes de la

PRERA y si bien se le ocupó el revólver en la vía pública lo fué cuando se trasladaba de un almacén a otro en comisión oficial.

En el caso de Bosch, supra, la corte estuvo dividida. La jurisprudencia según quedó establecida por la opinión que prevaleció se resume como sigue:

"Un mayordomo o celador de finca está dentro de su propia finca mientras actúa como tal mayordomo o celador. Él tiene necesariamente el uso y ocupación de la propiedad que recorre, sin necesidad de vivir en ella o de que el dueño le arriende parte del terreno o le dé un derecho titular nominal a la propiedad."

"El celador de una finca no deja de ser tal cuando, a fin de reprender o reprimir a una persona que está llevándose la yerba de la propiedad de su patrono, va a la carretera. El penetar en la vía pública en tales condiciones cae claramente dentro de sus deberes. Y teniendo él derecho a usar una pistola mientras desempeña sus deberes de celador, y siendo el acto de él salir a la vía pública uno que cae enteramente dentro de la esfera de su empleo o de las atribuciones del mismo, mientras está en la vía pública en tales condiciones no porta un arma prohibida dentro del significado de la ley."

Como puede verse fácilmente, no es aplicable a los hechos de este caso. A nuestro juicio la prueba aquí es dudosa en cuanto a si el acusado fué debidamente autorizado para portar armas dentro de los almacenes y a si era un verdadero celador. Prescindiendo, sin embargo, de la duda o resolviéndola por completo en su favor y aceptando que fuera un celador autorizado para portar armas dentro de los almacenes cuya vigilancia le estaba encomendada, no se demostró que saliera del almacén a la vía pública con el arma persiguiendo a alguna persona que estuviera cometiendo algún acto ilegal en el almacén, o a virtud de algo semejante.

La ocupación del arma tuvo lugar en plena vía pública, a considerable distancia del edificio en que trabajaba el acusado y aunque se diera crédito a su teoría de que iba prestando un servicio de un edificio a otro de la misma agencia gubernamental, habría siempre que concluir que ese servicio nada tenía que ver con la vigilancia de las provisiones, aparte

de que dada la distancia de los almacenes entre sí, aunque hubiera tenido que ver no constituiría una explicación razonable de la absoluta necesidad en que se encontró de salir portando el arma.

Si un estado de alarma realmente existía, si era en verdad necesario el servicio de celadores armados que rondaran los almacenes, medios tuvo la PRERA para obtener la autorización de ley de la corte de distrito, medios que la propia prueba de descargo demuestra que conocía y que ejercitó cuando lo creyó conveniente.

Todo induce a creer que aquí se trataba de la portación de un arma prohibida injustificadamente y por tanto que cumplieron estrictamente con su deber el policía al ocuparla, el fiscal al formular la acusación y el juez al dictar la sentencia condenatoria que dictara, *que deberá confirmarse, declarándose sin lugar el recurso interpuesto contra ella.*

El Juez Asociado Señor Córdova Dávila no intervino.