PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CRISPÍN NEVARES VIRELLA, acusado y apelante.

Núm. 6727.—*Sometido:* Febrero 23, 1938. *Resuelto:* Marzo 11, 1938.

*Celestino Iriarte, F. Fernández Cuyar y Héctor González Blanes,* abogados del apelante; *R. A. Gómez, Fiscal, y Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Crispín Nevares Virella fué denunciado ante la Corte Municipal de Toa Alta como autor de un delito de portar armas prohibidas consistente en que el 20 de diciembre de 1936 y en la carretera núm. 2, kilómetro 24, ilegal, voluntaria y maliciosamente, portaba sobre su persona un revólver.

Alegó su inocencia y fué condenado. Apeló para ante la Corte de Distrito de Bayamón. Se celebró un nuevo juicio y la corte le impuso dos meses de cárcel. Pidió reconsideración de la sentencia. Por resolución razonada de mayo

28, 1937, le fué negada su petición. Apeló para ante este Tribunal Supremo y en su alegato señala dos errores, el primero cometido a su juicio por la corte de distrito al aplicar indebidamente el derecho a los hechos del caso y el segundo al imponerle una pena excesiva de acuerdo con las circunstancias concurrentes.

■ Como testigos del Pueblo declararon el Jefe de la Policía Insular Enrique de Orbeta y el Comandante de Distrito de la misma José A. López.

Dijo el primero:

". . . . yo iba en el carro número 11, del Gobierno Insular, en viaje de inspección y en dirección hacia Toa Alta y al llegar al kilómetro 23, hectómetro 8, iba en la misma dirección del carro un ganado suelto. Caminamos unos cuantos metros detrás de este ganado cuando alzo la vista y me veo un jinete vestido de caqui; me fijé que llevaba un revólver al lado izquierdo, enganchado en el pantalón. . . . . Al ver a este jinete con el arma, detuve el carro, me bajé y le grité, pero él empezó a desviarse de la carretera. Yo le grité: 'deténgase que quiero hablar con usted.' Apresuró el caballo, cogió una verja de alambre y la tumbó y se tiró por una pieza de caña. Estuve gritando dos o tres veces, pero desapareció. Entonces me fuí donde el ganado, a los que conducían el ganado y les pregunté que quién era este hombre y nadie me sabía decir. Por fin, después de muchas preguntas, uno me dice: 'él se llama Crispín'. En vista de esto, seguí hasta Toa Alta y allí llamé al Jefe de la Policía, al Cabo López; le dije lo que había ocurrido y que se viniera conmigo a ver si localizábamos a este hombre. Al volver, como a cien metros después de pasar el puente en esta dirección, alcancé a ver el jinete en el medio de la carretera. Le dije al Cabo: 'yo lo conozco.' Ya casi al llegar, al vernos, volvió a montar en el caballo, salió corriendo hacia el lado izquierdo de la carretera, se tiró; entonces el Cabo López le gritó: 'Crispín, yo te conozco.' Al subir le pregunté dónde estaba el arma y dijo que la había dejado en la finca. Le pregunté si tenía permiso para portar armas, me contestó bastante fuera de tono: 'Usted debe ocuparse de los chófcres sinvergüenzas que andan por la carretera, llevo el revólver para protegerme de ellos.' Le dije al Cabo: 'Proceda al arresto de este hombre y proceda a hacer las investigaciones pertinentes y formúlele cargos.' "

Y manifestó el segundo:

"El día 20 de diciembre del año pasado, como a las 9:45 de la mañana, se personó en el Distrito el Coronel de la Policía, Enrique de Orbeta, acompañado de su chófer. Me informó que si yo conocía un tal Crispín que trabajaba con Nevares; yo le dije que sí, entonces me informó que a ese señor lo había sorprendido en la carretera con un revólver en la cintura y fuimos hacia el sitio de la carretera número 2, kilómetro 24 y al llegar al sitio, un poco más acá observamos que el señor Crispín Nevares estaba montándose a caballo; al ver el carro, trató de entrar otra vez, salió fuera de la carretera con rumbo hacia el pasto del cercado; yo lo llamé y él vino y fué identificado por el Coronel y el policía como la misma persona que portaba en aquel entonces el revólver; le requerí para que lo entregara y a la vez lo registré; no tenía ningún revólver encima."

Por la defensa declararon el propio acusado y José Nevares.

Dijo el acusado que era mayordomo de una finca de seiscientas cuerdas de José Nevares y que conducía el ganado dél establo a la parte baja de la finca, donde pasta; que la finca está situada a ambos lados de la carretera y que no llevaba arma. A la siguiente pregunta del fiscal: "¿El lo llamó y usted no le atendió la primera vez?", contestó:

"Me paré a la parte abajo de la carretera en ese momento, pues cuando bajó del carro, se apeó y dijo: 'Oiga, párese ahí.' Me detuve por primera vez. 'Venga acá.' Entonces yo me aguanté, volvió y dijo: 'Vuelva acá porque le voy a meter un tiro.' Entonces yo dije: 'Yo no tengo que ir porque yo tengo que ir por la finca, soy empleado, mayordomo.' Oí que la señora le dijo: 'Usted con tan buen cuerpo, no le pegas un tiro.' Yo creí que era verdad y seguí corriendo."

José Nevares manifestó que el acusado era mayordomo de su finca que se extiende a ambos lados de la carretera; que no presenció los hechos, y que para llevar a alimentar al ganado desde el establo tiene que cruzarse la carretera y andarse un pedazo como de un cuarto de kilómetro.

Como puede verse existe un conflicto absoluto en la prueba. El Jefe de la Policía asegura que el acusado portaba sobre

su persona y en la carretera un revólver y el acusado declara que él no portaba arma alguna.

En su alegato la defensa abandona la posición de la no portación del arma por parte del acusado. Se funda en que siendo el acusado un mayordomo que conducía ganado de una parte de la finca a otra, tenía derecho a ir armado aunque tuviera que cruzar la carretera. Cita los casos de *El Pueblo* v. *Bosch,* 43 D.P.R. 741 y *El Pueblo* v. *Rodríguez,* 43 D.P.R. 749.

El primero se diferencia del presente. Bosch era celador de una central cuyas tierras estaban a ambos lados de la carretera. Se encontraba armado dentro de la finca y si armado salió a la carretera fué en persecución de dos hombres que estaban llevándose la yerba de la propiedad de su patrono.

Menos diferencia existe entre este caso y el de Rodríguez, supra, porque en el de Rodríguez se reconoce que el acusado anduvo por la carretera armado como un cuarto de milla, yendo desde el sitio de su trabajo hasta su casa, pero se hace énfasis en que había sido especialmente ''comisionado para mantener una vigilancia estricta a causa de la existencia de una amenaza de hurtar caballos.'' 43 D.P.R. 750.

En este caso sometido ahora a nuestra consideración y resolución el acusado mayordomo no tuvo necesidad alguna de salir armado a la carretera. Como se dijo en el caso de *El Pueblo* v. *Echevarría,* 46 D.P.R. 646, 648, posterior a los de Bosch y Rodríguez, en una opinión unánime de la Corte, emitida por el Juez Asociado Sr. Aldrey:

''El apelante no debió salir con su revólver para ir a la finca de otra persona para entregar un caballo y recoger el suyo, teniendo que caminar así por la carretera; estaba en una función de su cargo, pero ella no requería que fuese armado. La distancia que anduvo por la carretera no es de importancia, pues lo mismo es que anduviese por ella un kilómetro, como menos o más de esa distancia. En las circunstancias de este caso él no tenía derecho a transitar con un revólver por la carretera.''

Y como expresó el juez de distrito en su resolución negando la reconsideración de la sentencia:

"No debe olvidarse que nada hay directamente en la ley que autorice a un agente o celador a portar armas en la propiedad de su principal. *Pueblo* v. *Cardona,* 50 D.P.R. 206, 208. Por razón de que un mayordomo o celador tiene necesariamente el uso y ocupación de la finca que vigila y recorre, la jurisprudencia ha reconocido que él, en sus funciones, está en su propia finca.' *Pueblo* v. *Bosch,* supra. Es decir, que el mayordomo o celador simbólicamente actúa como dueño de la finca en cuanto a su vigilancia se refiere. Pero esto no quiere decir que un mayordomo o celador, por el mero hecho de serlo, puede portar un arma fuera del ejercicio de sus funciones y aun dentro del ejercicio de su empleo cuando no existe la necesidad de estar armado."

Recientemente en el caso de *El Pueblo* v. *García,* 52 D.P.R. 297, este tribunal, copiando del resumen, resolvió:

"Suponiendo al acusado autorizado para portar armas dentro de los almacenes de provisiones de la F.E.R.A. y que fuera celador de los mismos, su actuación al salir armado de un almacén a la vía pública sin nada que indicara que perseguía a alguien que cometiera algún acto ilegal en el almacén, o algo semejante, infringe la ley, no bastando a justificarla el que se trasladara del almacén a otro en misión oficial cuando ésta nada tiene que ver con la vigilancia encomendádale ni explica la necesidad en que se encontrara de salir a la vía pública portando el arma."

No erró la corte sentenciadora, pues, al aplicar el derecho a los hechos del caso.

Tampoco cometió el segundo error que se le imputa. Pudo, dadas las circunstancias concurrentes, haber impuesto el mínimum de la pena. De haberlo hecho, nada hubiéramos tenido que decir. Pero creyó que debía imponer dos meses. El máximum fijado por la ley es el de seis. Y nada estamos tampoco justificados en decir porque la corte estuvo en mejores condiciones que nosotros para apreciar en toda su extensión las dichas circunstancias concurrentes y no se excedió en sus facultades. Menos del grado medio de la pena fué el escogido por ella para castigar la infracción y dado el gran número de delitos de sangre que se vienen cometiendo en Puerto Rico y en atención al hecho de que la portación de armas de ofensa

y defensa complica y agrava las consecuencias de cualquier encuentro personal y en ocasiones lo provoca, debe serse rígido en el castigo de los infractores de la ley que prohibe dicha portación.

*Debe declararse el recurso sin lugar y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.