El Pueblo de Puerto Rico, demandante y apelado, *v.* Dionisio Fuentes, acusado y apelante.

Núms. 7789 y 8000.—*Sometidos:* Abril 5, 1940. *Resueltos:* Mayo 3, 1940.

*Arturo Aponte* y *F. Rebollo López,* abogados del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Fidel Rodríguez, Policía Insular, formuló dos denuncias contra Dionisio Fuentes en la Corte Municipal de Río Grande, una por acometimiento y agresión con circunstancias agravantes y otra por portar armas prohibidas.

Condenado el acusado en la corte municipal, apeló para ante la del Distrito, San Juan. Llamadas las causas en ésta a los efectos de la celebración del juicio *de novo,* las partes estipularon practicar la prueba conjuntamente. La corte aprobó la estipulación.

Cuatro testigos declararon por el Pueblo, a saber: Carlos Pérez, Campoamor Rivera, José Antonio Carrasquillo y Fidel Rodríguez.

Dijo el primero que el 25 de agosto "venía de la tienda de comprar un encargo para casa, unas grampas, y al llegar al paso nivel y tirar para el paso del río él (Dionisio Fuentes) bajaba con una vaca para la cárcel, y al poco rato, yo seguí la misma dirección para cruzar para casa y él bajaba con la vaca y entonces salió Campoamor que venía de allá arriba y vi que ahí tuvieron una lucha y cuando llegué estaban luchando los dos con la vaca, y entonces yo llegué y cuando llegué Campoamor levantó el lazo de la vaca y se lo sacó de la cabeza, y este maestro (refiriéndose al acusado) sacó un espadín y le tiró a él, y yo avancé para meter la paz y le dije: 'Deje eso, no lo corte. . . .' . . . . . pero como tenía las dos manos ocupadas y no tenía nada con él me paré al pie de él y al poco rato sacó el machete y me tiró y me dió esta herida y me tumbó casi la mano, y entonces viró para atrás y se fué y yo me vine para el pueblo a curarme. Ya ha mutilado tres hombres conmigo."

Que eso "ocurrió en Mameyes, de Río Grande, en la carretera que tira al Yunque." Repreguntado insistentemente sobre si llevaba una hachuela tratando de agredir con ella al acusado, sostuvo que no la llevaba, ni trató de agredir a Fuentes. Que su intención al intervenir fué "meter la paz."

El machete del acusado fué entonces ofrecido en evidencia y admitido sin objeción. Seguidamente declaró Campoamor Rivera, como sigue:

"Lo que pasó fué que habiéndoseme perdido una vaca y después de haberla buscado en el palmar, en Luquillo y por todos los alrededores, después de haber perdido la esperanza de encontrarla iba a darle cuenta a la Policía y entonces vi un individuo con ella por la carretera de El Yunque y fuí donde él y al hacerle la pregunta que para dónde llevaba aquella vaca que era mía y nada me contestó; volví y le hice de nuevo la pregunta y tampoco me contestó, y entonces me acerqué a la vaca y le saqué el lazo que tenía en los cuernos, y al sacarle el lazo me tiró un tajo con el machete y me cogió

de plano y siguió, y pasaba Carlos Pérez y al pasar Carlos Pérez sacó el machete y le dió un tajo y siguió para arriba.''

Repreguntado contestó que Pérez no traía hachuela, sino un cartucho de grampas.

El tercer testigo, José A. Carrasquillo, dijo:

''Mientras el señor Diego Carrasquillo y yo íbamos con una vaca de la finca de Don Luis González, ya que habíamos pasado el río a eso de las 8:00 . . . . Oí una voz que dijo: 'Ay me cortó.' Entonces como venía para acá vi al señor Carlos Pérez herido frente a la casa de Onofre Plaza y estaban ligándolo.''

Y el cuarto, Rodríguez, manifestó: que ocupó al acusado ''un machete y al ocuparle el machete le dije: 'Voy a arrestarlo a usted por haber herido a Carlos Pérez', y dijo: '¿No tiene la mano en el suelo? —No, señor, está herido, pero no tiene la mano colgando.' Eso me dijo el acusado. . . . . Dijo entonces que él le había tirado a cortarle esa mano porque le iba a quitar un ganado por el gusto.''

Repreguntado: ''¿Le dijo que Carlos Pérez tenía una hachuela en el momento que le tiró?'' Contestó: ''No me hizo esa manifestación.''

La prueba de descargo consistió en las declaraciones de Marcelo Vega, Ricardo Algarín, Juan Rosa y Diego Carrasquillo.

Dijo Vega que era mayordomo de una finca de don José Vahamonde y el acusado, a la fecha de los sucesos, guardia de la misma, siendo sus deberes ''tapar los boquetes, voltear la finca y si encuentra en la finca algún animal llevarlo a la cárcel; si hay un boquete le pone espeque al boquete y anda con espeques y soga. . . . Por si hay alguna res haciendo daño la coge y la lleva a la cárcel, y lleva un machete por si necesita cortar un espeque, y lleva diez o doce grampas también.''

Algarín manifestó:

''Ese día el señor Juan Rosa y yo estábamos cortando una palma y bajaba el señor Dionisio Fuentes con una vaca para la cárcel. El

señor Campoamor corrió y llegó donde Dionisio y le empuñó la soga y lucharon, y bajaba Carlos Pérez con una hachuela en la mano y un cartucho de grampas y hubo una lucha entre Carlos y Dionisio, y ocurrió que el señor Dionisio al ver que Carlos Pérez le tiró con la hachuela le metió el machete y lo hirió en una mano y se le cayó la hachuela de la mano y yo seguí.''

Rosa, el tercer testigo de descargo, narró los hechos como sigue:

''Ese día que pasó el caso estábamos nosotros en la guardarraya del río tumbando unas palmas y cuando bajaba el señor Dionisio Fuentes con una vaca para la cárcel, que cruzó el río, Campoamor se puso a quitársela y se emborujaron los dos a luchar, y entonces vino Carlos Pérez con una hachuela para encima de él, y cuando lo vió venir se le despegó a Campoamor y le metió el espadín cuando él le tiró con la hachuela.''

Por último, Diego Carrasquillo declaró:

''. . . venía Dionisio Fuentes con unas reses para la cárcel, y venía Campoamor y lo vió y cruzó el río y se le fué encima a quitarle la vaca y tuvieron una lucha él para quitársela y él para no dársela, y bajaba Carlos Pérez con una hachuela y cuando vió la lucha corrió con la hachuela y se le vino frente a Dionisio y le tiró con la hachuela y Dionisio le metió el machete.''

Terminada la práctica de la evidencia, la corte sentenciadora se expresó así:

''La Corte da entero crédito a la prueba de cargo y no da absolutamente ningún crédito a la prueba de defensa. Esto no es un acometimiento y agresión grave; esto es un delito de mutilación, y de la propia declaración del Policía se desprende que después de realizada por usted la agresión le preguntó usted al Policía si se le había caído la mano. La Corte cree que éste es uno de los casos más serios y graves. En cuanto al caso de portar armas, usted puede andar son su machete en la finca, pero no por los caminos. La Corte Municipal en el caso de portar armas le impuso un mes de cárcel y esta Corte le impone dos. En el caso de acometimiento y agresión grave la Corte estima que la Corte Municipal fué muy benigna al no imponerle nada más que cuatro meses de cárcel. La Corte cree que le debe imponer el máximo de la pena y le impone dos años de cárcel. Ese hombre ha quedado inútil.''

■ Apeló el acusado en ambos casos y los sometió por un solo alegato en el que señala cinco errores. Por el primero sostiene que la corte de distrito actuó sin jurisdicción. Argumenta:

"Las dos denuncias que sirvieron de base a ambos recursos consignan por manera expresa que el supuesto delito tuvo lugar 'EN LA CARRETERA DEL YUNQUE', y así se demostró. Trans. pág. 1 y Récord adicional pág. 1.

"Es de conocimiento judicial, *Príncipe* v. *Am. R. R. Co.*, 22 D.P.R. 303, que la carretera del 'Yunque', o sea la que empieza en el poblado de 'Palmer', junto a la Núm. 5 de Río Piedras a Fajardo, y termina en el barrio de 'Río Blanco', carretera de Naguabo a Juncos, es una carretera que pertenece a Estados Unidos y que se halla bajo el exclusivo control del Gobierno Federal con peones camineros federales, guardias y policías federales y sobrestantes e inspectores federales.

"Siendo esto así, es indudable que cualquier delito cometido en dicha carretera es de la exclusiva jurisdicción de los tribunales federales."

Como dice el fiscal en su informe:

"La verdad única de conocimiento público y notorio en relación con la jurisdicción de la carretera del Yunque, es la siguiente:

"En el kilómetro 32.909, entre Mameyes y Luquillo, de la carretera insular Núm. 3, que empieza en Río Piedras y remata en Ponce, empieza el camino o carretera del Yunque, que atraviesa toda la montaña para terminar en la carretera insular Núm. 28, entre Juncos y Naguabo.

"Esta carretera del Yunque, tiene una longitud de 30.80 kms., y está dividida en tres secciones, a saber:

"1ª—Desde enlace con la carretera insular Núm. 3, en el km. 32.909, entre Mameyes y Luquillo, hasta el km. 7.40 monte arriba en que empieza la reserva forestal federal, (insular).

"2ª—Desde el km. 7.40 hasta el barrio Río Blanco, km. 21. Este trozo, por atravesar terrenos pertenecientes al gobierno federal, reserva forestal, es exclusivamente federal, y es por eso que tanto en el km. 7.40 en que empieza dicha reserva, como en el 21, en que termina, existen sendos letreros bien grandes y visibles a larga distancia, avisando al público en general, que todo ese trozo del camino, y nada más que ése, es exclusivamente federal.

"3ª—Desde el km. 21, Río Blanco, hasta el 30.80 en que remata en la carretera insular Núm. 28 que va desde Juncos a Naguabo, (insular).''

Y no existiendo como no existe prueba de que el Gobierno Insular hubiere traspasado al federal la parte de la carretera que le pertenece y tendiendo como tiende la evidencia a demostrar que los hechos ocurrieron en esa parte, no está el señalamiento de error bien fundado.

En el caso de *El Pueblo* v. *Suárez,* 51 D.P.R. 903, 906, esta corte, por medio de su Juez Asociado Sr. Travieso, se expresó así:

"La acusación en el caso de autos se ajusta al lenguaje del estatuto y es suficiente para informar al acusado sobre la naturaleza del delito que se le imputa. Las palabras 'el edificio que ocupa la oficina de correos de Puerta de Tierra' no imputan al acusado la comisión de un delito federal. Esas palabras han sido insertadas en la acusación para describir e identificar mejor la propiedad que se alega el acusado trató de destruir ilegalmente. La acusación sería igualmente suficiente si imputase al acusado el propósito de destruir 'el edificio situado en la esquina de la Avenida Ponce de León y de la calle Padre Hoff.' Todo lo que requiere el estatuto es que se use el explosivo con el propósito de hacer daño o destruir una propiedad, no importa quién pueda ser su dueño. Si el acusado levanta la cuestión jurisdiccional, alegando que la propiedad que se ha tratado de destruir pertenece al Pueblo de los Estados Unidos y que por consiguiente la Corte Federal tiene jurisdicción exclusiva sobre el caso, es a él a quien incumbe sostener tal alegación.''

Por los otros señalamientos se imputa a la corte que apreció la prueba movida por pasión, prejuicio y parcialidad, que erró al condenar al acusado por portar armas, al no tomar en consideración las circunstancias especiales en que se hallaba, infringiendo las secciones 2 y 3 de la Ley sobre acometimiento y agresión, y al no darle el beneficio de la presunción de inocencia y de la duda razonable que estatuye el artículo 236 del Código de Enjuiciamiento Criminal.

El examen de la transcripción no revela que la corte actuara movida por pasión, prejuicio o parcialidad. De modo

enfático manifestó que creía la prueba de cargo y que no daba crédito a la de descargo. Al actuar de tal modo lo hizo en el cumplimiento de su deber, ejercitando su razón y su conciencia. Ambas pruebas eran irreconciliables en cuanto a la manera como se desarrollaron los hechos. El conflicto tenía que resolverse en un sentido o en otro, y lo fué en contra del acusado. De las manifestaciones que hizo el juez no puede deducirse que estuviera prejuiciado en su contra. Tampoco de la circunstancia del aumento de la pena.

■ Los casos de *Pueblo* v. *Segarra,* 36 D.P.R. 116 y *Pueblo* v. *Soto,* 34 D.P.R. 286 que cita el apelante al discutir su tercer señalamiento, o sea, aquél por el que sostiene que la corte erró al condenarlo por portar armas, no son aplicables. En ambos se resolvió que el acusado no era culpable porque el arma la portaba con motivo de su empleo y dentro del ejercicio del mismo. Y ésa no es la situación en éste. Para conducir al depósito municipal la res que encontró en la finca de su principal, no necesitaba el acusado armarse de un machete. Y la portación de un arma prohibida en un camino público, bajo tales circunstancias era claramente ilegal. *Pueblo* v. *Rivera,* 35 D.P.R. 546; *Pueblo* v. *González,* 40 D.P.R. 71; *Pueblo* v. *Piña,* 41 D.P.R. 762; *Pueblo* v. *Muñiz,* 45 D.P.R. 590; *Pueblo* v. *Echevarría,* 46 D.P.R. 646; *Pueblo* v. *Cardona,* 50 D.P.R. 206; *Pueblo* v. *Nevares,* 52 D.P.R. 801; *Pueblo* v. *García,* 52 D.P.R. 297.

■ En tal virtud y no surgiendo de la prueba que creyó el juez sentenciador que el acusado actuara en defensa propia, ni que fuera despojado de su derecho a ser absuelto por existir duda razonable y fundada de su culpabilidad, no puede concluirse que se infringieran los preceptos de ley que expresamente invoca el apelante.

■ En cuanto a que la pena sea excesiva, no creemos en verdad que los dos años de cárcel impuestos no estén justificados, si se considera el resultado de la agresión. Gráficamente dijo el agredido al declarar: "Sacó el machete y

me tiró y me dió esta herida y me tumbó casi la mano."
Agregando: "Ya ha mutilado tres hombres conmigo." El
caso de *Pueblo* v. *Quiñones,* 22 D.P.R. 626 es claramente
inaplicable.

*Deben confirmarse las sentencias apeladas.*